IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ELOISE DODSON PLAINTIFF

v. No. 4:06CV00922 JMM

SOCIAL SECURITY ADMINISTRATION DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income (SSI ) benefits. The parties have submitted their appeal briefs, and the issues are now joined and ready for decision.

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.[1]

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.

Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

[1]Plaintiff had the burden of proving her disability by establishing a physical or mental impairment lasting at least one year that prevents her from engaging in any substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Baker v. Apfel, 159 F.3d 1140, 1143 (8th Cir. 1998); Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

Plaintiff filed an application for SSI on December 30, 2002, with a protective filing date of June 27, 2001, alleging that she became disabled on June 23, 1996, due to migraine-like headaches, neck and low back pain, dizziness, stress anxiety, and depression (Tr. 72, 83, 151,160).[2] Her claims were denied initially and upon reconsideration (Tr. 266, 273). Pursuant to plaintiff's request, a hearing was conducted by an Administrative Law Judge (ALJ) on January 20, 2004; a vocational expert (VE) also testified (Tr. 381-397).

An unfavorable decision was issued on May 24, 2004 (Tr. 216-222). On February 23, 2005, the Appeals Council vacated the ALJ's decision and remanded the proceedings for consideration of additional evidence (Tr. 230-232). A second hearing was conducted by another ALJ on March 16, 2006, at which plaintiff, her husband, and another VE testified (Tr. 398-429). On April 24, 2006, the ALJ issued a decision denying plaintiff's claim for benefits (Tr. 14-20). The Appeals Council, on July 13, 2006, denied plaintiff's request for review, making it the final decision of the Commissioner (Tr. 5-7). On August 3, 2006, plaintiff filed this action pursuant to 42 U.S.C. §405(g).

Plaintiff was 52 years old on the date of the second hearing (Tr. 401). She completed the eighth grade, can read, sometimes has problems speaking "big words," and has no past relevant work (PRW)(Tr. 401-402).

---

[2]Plaintiff had previously filed applications for SSI benefits in 1996 and 2001 which were denied. "A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which she applies for benefits, no matter how long she has actually been disabled. See Brown v. Apfel, 192 F.3d 492, 495 n. 1 (5th Cir. 1999); see also 20 C.F.R. § 416.335." Jones v. Barnhart, 372 F.Supp.2d 989, 993 (S.D. Tex. 2005).

At the hearing, plaintiff testified that she suffers from high blood pressure for which she regularly takes medication, but it was up the last time she went to the doctor (Tr. 402-403). She stated that she can tell when her blood pressure is too high because her head feels tight and heavy and will sometimes jerk back, she feels dizzy and hot, and the back of her neck feels tight and heavy (Tr. 403). Plaintiff takes Metformin for her Type 2 diabetes, but is sometimes dizzy, weak, and feels like she is going to pass out (Tr. 403-404). She said she has eye problems from the diabetes, with three spots in the front of her eyes and, although she was sent to the Jones Eye Clinic at UAMS to have an eye exam, she did not have insurance (Tr. 404-405). Plaintiff stated that all her treatment has been by Dr. James Knutson (Tr. 405). She wears reading glasses, but the doctors have not been able to determine the cause of the spots or floaters in her eyes.(Tr. 407). Plaintiff said that she feels pressure in her right eye but no doctor has measured the ocular pressure in her eyes. (Tr. 407-408).

Plaintiff further testified that she has pain in her neck and low back and sometimes in her right leg when she is walking (Tr. 408). She said she has migraine headaches confirmed by the doctors (Tr. 408). Plaintiff stated that the doctors at UAMS had given her Bextra for pain and she was to take three Motrins three times a day (Tr. 409). She also tried the home exercises the doctors had directed, but that did not seem to help and she uses a heating pad (Tr. 409). Plaintiff affirmed, as contained in her report to Dr. Knutson in June of 2004, that her pain was 8 on a scale of 0 to 10 (Tr. 409). She said she has pain every day and that none of the medicine had helped reduce the pain; she further testified that the doctors had not talked to her about surgery or anything else such as stronger medicine that might address her pain (Tr. 410). Plaintiff explained that stooping, bending, and raising up aggravated the pain (Tr. 410). The heaviest weight she could pick up was a half of

gallon of milk and she would have trouble reaching over and picking up items on the floor or under a table (Tr. 411).

Plaintiff estimated that she could sit for 45 minutes before she would have to get up or change positions, she would get pain from just sitting in an erect chair, and she had experienced muscle spasms or cramping in her back and legs (Tr. 411-412). She stated that she had never been given muscle relaxers and reiterated that the doctor had just told her to take three Motrins three times a day, which she was doing (Tr. 412). Plaintiff testified that she could stand for a little over an hour and could walk a block or two, but would probably have some kind of pain (Tr. 412-413). She had never had a drivers license and had not driven since she was twelve (Tr. 413). Her husband or her daughter would take plaintiff for errands; he is on disability (Tr. 413-414). She stated that her daughter and her son helped do chores around the home such as yard work or moving furniture if she had to dust or vacuum (Tr. 414).

Plaintiff said she had some depression, but none of the doctors had given her an antidepressant or counseled with her after she had advised them of her depression (Tr. 415). She described her depression as feeling lonesome or wanting to do something bad to herself – just sad (Tr. 415). Plaintiff also stated that she has an anxiety problem where her heart starts beating real fast when she goes into public places (Tr. 416). She said she did not sleep well at night and when asked if it was due to pain or bad knees, she responded that she did not know – "I just do" (Tr. 416-417).

Plaintiff described a typical day as getting up and washing dishes, watching TV, reading a newspaper every other day, and visiting her father and her sisters (Tr. 417-418). She testified that she was given tests at the State Rehabilitation Services and they sent her to the Goodwill Store in

2005, but she never went because of her anxiety; she did not discuss her anxiety situation with the people at Goodwill (Tr. 418-419).

Plaintiff stated that Dr. Knutson had never placed any restrictions or advised her of any things that he preferred her not do as a patient (Tr. 419). She added that real loud noises cause her head and neck to get tight (Tr. 420).

Plaintiff's husband testified that he massages her back and gets her things because she gets real dizzy and has even stumbled and fallen (Tr. 421-422). She cannot vacuum (Tr. 421). Plaintiff complains of pain, tightness and dizziness even when watching TV (Tr. 422). He opined that her health has gotten worse since 1999 as she has to sit to catch her breath in the supermarket and it hurts her wrists to pick up anything (Tr. 422-423).

The ALJ posed a hypothetical to the VE of an individual who was of the same age, educational background and past work experience as plaintiff and retained a residual functional capacity (RFC) for light work – at the light end sedentary level – with additional limitations of no stooping or bending required, no overhead work, and where perfect vision was not required (Tr. 425). The VE identified cleaners such as janitors where there are over 1.9 million jobs nationally and over 380,000 regionally (Tr. 426). He also identified an assembler, packaging hardware or other products that go out in manufacturing and shipping, for which there were over 1.1 million jobs nationally and approximately 130,000 jobs regionally (Tr. 426).

The ALJ then asked plaintiff if she took any prescription medication for depression or anxiety or had sought treatment or counseling for depression within the last year (Tr. 426-427). Plaintiff responded that she had told her primary care physician about the depression and anxiety, but he had not prescribed any medication (Tr. 426-427).

The ALJ posed a second hypothetical of an individual with additional limitations, due to a combination of medical problems and associated pain, who would be unable to engage in sustained work activity for a full, eight-hour days on a regular and consistent basis and the VE responded that there would not be any jobs at any level that such a person could be expected to perform (Tr. 427). Plaintiff's attorney posed a hypothetical of an individual limited to light RFC who could not engage in any significant walking, standing, stooping, bending and would have to work in a controlled type of environment as far as humidity, temperature extreme avoidance and would have a combination of symptoms, pain and other discomfort that would be frequent and severe enough to significantly interfere with a form of sustained competitive work and would markedly interfere with such "an individual's inability of a liability" (Tr. 427-428). The VE replied in the negative (Tr. 428).

The ALJ undertook the familiar five-step analysis in determining whether plaintiff was disabled.[3] He found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Tr. 14). The ALJ further found that plaintiff has a history of treatment for a back disorder and diabetes mellitus and has a "severe" impairment, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 14-15).

---

[3]The five-step sequential evaluation is as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C.F.R. §§ 416.920 and 404.1520. See, Cox v. Barnhart, 345 F. 3d 606, 608 n. 1 (8th Cir. 2003).

The ALJ summarized plaintiff's hearing testimony and noted that her subjective allegations were not borne out by the record and are not found to be fully credible to the extent alleged (Tr. 15).

The ALJ's written opinion reflected a review of the medical records. He found that plaintiff was examined in the emergency room on several occasions: on June 15, 1996, she was treated for a pressure feeling in her head with the diagnosis being a headache and medication was prescribed; she was seen again on June 22, 1996 (Tr. 15, 182-187). The ALJ also noted plaintiff was treated on July 17, 1996, for a headache from the back of her neck; the impression was tension headache (Tr. 15, 191).

He continued that plaintiff was seen in the emergency room, on July 26, 1996, with neck and head pain (Tr. 15). X-rays of the cervical spine showed a degenerative disc and some arthritic changes at the C5-C-6 level; discharge diagnosis was neck and occipital pain and medication was prescribed (Tr. 15, 196-204). An August 9, 1996 CT scan of plaintiff's head was normal (Tr. 16, 192).

On November 8, 2000, plaintiff was seen in the emergency room where she was assessed with right trapezium pain and anemia (Tr. 16, 193-195).

The ALJ reviewed the February 13, 2002 consultative general physical examination where plaintiff complained of neck and left hip pain and stiffness (Tr. 16). The exam showed that Plaintiff's blood pressure was 188/110; range of motion was within normal limits with no atrophy noted; straight leg raising was normal; there were no neurological deficits; and x-ray of her left hip and left knee was normal (Tr. 16, 206-211). Plaintiff was diagnosed with high blood pressure and neck and back pain and no limitations were noted on her ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak (Tr. 16, 212).

He further reviewed the treatment that plaintiff had received from Dr. Knutson at UAMS from February 11, 2004 to June 2, 2004: on February 11, 2004, plaintiff was treated for headache and diagnosed with TMJ syndrome (Tr. 16, 240-244); on February 18, 2004, plaintiff was found to have high blood pressure for which she was prescribed medication, and x-rays of the cervical spine showed some narrowing and hypertrophied spurring at C4-C5 and C5-C6 with loss of normal cervical lordosis which was noted as "may be related to positioning" and lumbar spine showed mild scoliotic curvature and no other abnormalities (Tr. 16, 238-239, 246, 255); plaintiff failed to keep her appointment for a scheduled colonoscopy (Tr. 16, 338); and on June 2, 2004, plaintiff was found to suffer from diabetes mellitus, type II for which she was prescribed medications, instructions on diet and exercise and blood sugar testing (Tr. 16, 252-254).

Next, the ALJ summarized the June 16, 2004 evaluation by Arkansas Rehabilitation Services (Tr. 16, 262-265). Plaintiff's academic testing showed a reading level at the sixth grade level, math at the fourth grade level, and spelling at the seventh grade level; the Wonderlic Scholastic level exam of general cognitive ability or level in which the individual learns, understands instruction and solve problems showed that plaintiff had low average abilities; Dena Baker, M.S., the licensed psychological examiner reported that these findings indicated a low average to borderline intellectual ability with academic skills and so plaintiff would likely require on-the-job training in a semi-skilled environment (Tr. 16, 262-263). Dr. Bill Owens diagnosed plaintiff with neck and low back pain, hypertension and diabetes mellitus and opined that she was limited in walking, standing, stooping and bending, but she could perform light duty in a controlled environment with no strenuous labor (Tr. 16, 264-265).

The ALJ observed that plaintiff alleged depression and anxiety in her testimony, but that was never reported to a medication professional; she was not under any treatment, counseling or medication for a mental impairment; and she had never been hospitalized for a mental impairment (Tr. 16). He further found that the evidence failed to show that plaintiff's daily activities were restricted due to emotional causes and there was no significant deficit in her ability to function socially; the record did not show any significant level of deficiencies of concentration, persistence, or pace or any actual episodes of deterioration or decompensation in work settings; and so plaintiff did not have a severe mental impairment within the meaning of the Social Security Administration regulations (Tr. 16-17).

The ALJ noted that while plaintiff suffers from high blood pressure and diabetes mellitus, those impairments are treatable with medications (Tr. 17). Regarding her back pain, the ALJ noted that no physician had placed limitations upon her as to exertional activities; x-ray studies had been normal; she had been prescribed anti-inflammatory medication; and she had not been prescribed narcotic medication (Tr. 17). He concluded that plaintiff retained the RFC for light work which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, she was capable of standing and/or walking with normal breaks for a total of about 6 hours in an 8-hour workday, was capable of sitting with normal breaks for a total of about 6 hours in an 8-hour workday, and was capable of some pushing and pulling of arm and leg controls (Tr. 17).

The ALJ evaluated plaintiff's subjective allegations and complaints pursuant to the criteria set forth in Polaski v. Heckler, 739 F. 2d 1320 (8th Cir. 1984).[4] He noted that the medical findings are not consistent with the disabling pain alleged by plaintiff and the fact that she might have some level of discomfort was given due consideration in reaching the finding that she would be limited to light work (Tr. 17-18). The ALJ, in considering aggravating and functional limitations, stated that no physician had placed limitations in standing, walking, bending and stooping; plaintiff had listed her daily activities to include taking care of her personal needs, doing laundry, washing dishes, changing sheets, ironing, grocery shopping, shopping for clothes, preparing meals, attending church, watching television, reading, and visiting friends; and two children remained at home under plaintiff's care (Tr. 18). He further noted that plaintiff last sought medical treatment in June of 2004; does not keep a doctor-patient relationship for her medical care; takes Metformin for diabetes, Lisinopril and HCTZ for high blood pressure, and Motrin for back pain; and she has not been prescribed physical therapy for her back and neck pain nor any narcotic medication for her pain (Tr. 18). The ALJ found that the testimony of plaintiff's husband was based upon an uncritical acceptance of plaintiff's complaints and, to some degree, motivated by the desire to see her obtain benefits (Tr. 18). Thus, he found that plaintiff still retained the RFC for light work (Tr. 18).

The ALJ stated that the VE identified the jobs of cleaner and assembler when asked to consider an individual with the same age, education and PRW of plaintiff who had the RFC for light work with the limitations of no stooping, bending and limited vision requirements (Tr. 18-19).

---

[4]These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) other treatments for relief of pain; and (6) functional restrictions.

Therefore, the ALJ found plaintiff not to be disabled (Tr. 19).

Plaintiff contends that the ALJ erred in relying of the VE's response to the first hypothetical as it did not encompass all of her limitations. She states that it is not disputed that her RFC is limited to light as determined by Dr. Owens, but the ALJ neglected to include in his first hypothetical the fact that plaintiff had significant headaches, limitations in range of motion due to her pain, and an inability to sustain activities because of her fatigue and other discomforts. Plaintiff continues that she testified that she had pain rated 8 which was consistent with what she had reported to Dr. Knutson. Regarding the ALJ's credibility analysis, she argues that the record clearly established that she does take medications, but they are not effective and she cannot afford them; the ALJ down-played her husband's testimony; her minimal medical treatment in some instances was due in part to the fact of her finances; the ALJ's mention of aggravating and precipitating factors is not consistent with the record evidence; the ALJ ignored statements by plaintiff's treating sources such as Dr. Knutson and overlooked evidence clearly showing her disabilities; and the ALJ ignored the combination of her impairments and only mentioned a history of back disorder and diabetes and did not mention her borderline intellectual functioning, her hypertension, her headaches, or her neck pain. Finally, plaintiff asserts that since the Appeals Council had remanded this case because of errors in failing to evaluate her mental disabilities and the results of the vocational rehabilitation evaluation, the Appeals Council obviously thought her mental impairments were significant and so the remand order was not complied with by the ALJ.

The Court finds the ALJ made a proper credibility analysis. An ALJ may discredit subjective complaints of pain if they are inconsistent with the record as a whole. Barry v. Shalala, 885 F.Supp. 1224, 1225 (N.D. Iowa 1995). The ALJ's decision reviewed the objective findings in the medical

evidence such as some degenerative narrowing, hypertrophied spurring at C4-6 and mild scoliotic curvature of the lumbar spine, and lack of limitations placed upon her by examining physicians between 2002 and 2006 compared to the testimony of plaintiff and her husband as to her limitations.

> Tucker complained of severe impairments due to back and leg pain. However, a number of diagnostic tools, including an MRI, myelogram, and post-myelogram CT, showed relatively minor degenerative changes. Additionally, Tucker's treating physicians did not place any restrictions on him despite the alleged severity of the pain. The medical expert similarly testified that Tucker should be medically able to perform sedentary work that allowed for frequent postural changes and required only seldom stair climbing or bending. This evidence caused the ALJ to question Tucker's credibility. Despite the ALJ's concerns about Tucker's credibility, he did not entirely ignore Tucker's complaints but instead balanced Tucker's subjective complaints against the objective medical evidence in arriving at an assessment of Tucker's RFC. Accordingly, we conclude that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.
>
> Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

In addition, the ALJ discussed plaintiff's lack of medical treatment since 2004, her daily activities, the medications prescribed including the lack of narcotic pain relievers, and the testimony of plaintiff and her husband as to plaintiff's pain. "It is for the ALJ as trier of fact to give the testimony of family members and friends such credence as he deems warranted." Kisling v. Chater, 105 F.3d 1255, 1258 (8th Cir. 1991). As the Commissioner has asserted, the ALJ did mention and consider her borderline intellectual functioning, her hypertension, her headaches, and her neck pain in reaching her RFC. The Court agrees with the Commissioner that the psychological screening was that plaintiff could perform semi-skilled work with some on-the-job training and the jobs enumerated by the VE only involved unskilled work.

The hypothetical question submitted to the VE was consistent with the limitations that the ALJ had found to constitute plaintiff's RFC. A properly phrased hypothetical question, as posed by

the ALJ here, constitutes substantial evidence. Warburton v. Apfel, 188 F. 3d 1047, 1050 (8th Cir. 1999).

Based on the record, the ALJ properly concluded that plaintiff's alleged depression/anxiety was not severe. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989).[5] As he found, except for plaintiff's testimony, there is no record of such complaints being made to medical professionals and she had never received treatment or medication for depression and/or anxiety. Although plaintiff testified that she had not gone to the Goodwill Store due to anxiety, she admitted that she did not advise Goodwill of that reason. To plaintiff's argument that the Appeals Council had remanded this case because of errors in failing to evaluate her mental disabilities and the results of the vocational rehabilitation evaluation so the Appeals Council obviously thought her mental impairments were significant, this ALJ, on remand, explained the lack of medical evidence to support plaintiff's allegations as well as the June 16, 2004 results of the psychological screening by Baker in which plaintiff reported no history of mental illness. The Court further notes that the Appeals Council, in the second appeal, found no reason to review the ALJ's decision after the remand.

In sum, the Court finds that there is substantial evidence to support the Commissioner's decision that plaintiff was not disabled.

Accordingly, the Commissioner's administrative decision is hereby AFFIRMED.

---

[5]"The ALJ found that Matthews suffered from mild situational depression but that this impairment was not severe enough to preclude her from working. Matthews asserts that the ALJ erred in assessing the severity of her psychological impairment without any evidence to support this finding and that the Secretary should have ordered a consultative psychiatric examination. The regulations, however, do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. 20 C.F.R. § 416.917(a); Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986) (*per curiam*); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 214 (6th Cir. 1986)."

IT IS SO ORDERED this 13th day of September, 2007.

UNITED STATES DISTRICT JUDGE